Form **843**
(Rev. January 1997)
Department of the Treasury
Internal Revenue Service

# Claim for Refund and Request for Abatement

▶ See separate instructions.

OMB No. 1545-0024

*Use Form 843 only if your claim involves (a) one of the taxes shown on line 3a or (b) a refund or abatement of interest, penalties, or additions to tax on line 4a.*

*Do not use Form 843 if your claim is for—*

- *An overpayment of income taxes;*
- *A refund of fuel taxes;*
- *An overpayment of excise taxes reported on Form 720, 730, or 2290 (see **General Instructions**).*

Please type or print.

| | |
|---|---|
| Name of claimant<br>ESTATE OF RANKIN M. SMITH, SR. | Your social security number<br>252 : 36 : 6181 |
| Address (number, street, and room or suite no.)<br>C/O SUNTRUST BANK, ATLANTA PO BOX 4655, DEPT 251 | Spouse's social security number<br>: : |
| City or town, state, and ZIP code<br>ATLANTA, GA 30302 | Employer identification number<br>58 : 6354904 |
| Name and address shown on return if different from above | Daytime telephone number<br>(404) 588-7444 |

1 Period—prepare a separate Form 843 for each tax period
From DATE OF DEATH , 19 , to JANUARY 26, , 19 2002

2 Amount to be refunded or abated
$ 5,478,849.74

3a Type of tax, penalty, or addition to tax:
☐ Employment ☒ Estate ☐ Gift ☐ Excise (unless reported on Form 720, 730, or 2290—see instructions.)
☐ Penalty—IRC section ▶ ________

b Type of return filed (see instructions):
☒ 706 ☐ 709 ☐ 940 ☐ 941 ☐ 943 ☐ 945 ☐ 990-PF ☐ 4720 ☐ Other (specify)

4a Request for abatement or refund of:
☐ Interest caused by IRS errors or delays (if applicable—see instructions).
☐ A penalty or addition to tax as a result of erroneous advice from the IRS.

b Dates of payment ▶

5 **Explanation and additional claims.** Explain why you believe this claim should be allowed, and show computation of tax refund or abatement of interest, penalty, or addition to tax.
SEE ATTACHED "EXPLANATION OF CLAIM FOR REFUND OF FEDERAL ESTATE TAXES PAID BY THE ESTATE OF RANKIN M. SMITH, SR"

COPY

INTERNAL REVENUE SERVICE
W&I – FIELD ASSISTANCE
JAN 25 2002
RECEIVED
ATLANTA, GA 30341

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the signature must be accompanied by the officer's title.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

SunTrust Bank, Co-Executor
By Thomas A. Shanks Jr. First Vice President — See attached pages for individual co-executors signatures & declarations — 1/25/2002
Signature (Title, if applicable. Claims by corporations must be signed by an officer.) Date

Signature Date

**For Paperwork Reduction Act Notice, see separate instructions.** Cat. No. 10180R Form **843** (Rev. 1-97)

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

**Form 843 – Claim for Refund and Request for Abatement**

**Estate of Rankin M. Smith, Sr.**
**SSN: 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**
**Date of Death: October 26, 1997**
**c/o SunTrust Bank, Atlanta**
**PO Box 4655 Dept. 251**
**Atlanta, GA 30302**

**EIN: 58-6354904**

**Attachment One**

Additional Executor's Signature

By: [signature]
Taylor W. Smith

Title: Co-Executor

Date: 1/23/02

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

**Form 843 – Claim for Refund and Request for Abatement**

**Estate of Rankin M. Smith, Sr.**
**SSN: 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**
**Date of Death: October 26, 1997**
**c/o SunTrust Bank, Atlanta**
**PO Box 4655 Dept. 251**
**Atlanta, GA 30302**

**EIN: 58-6354904**

**Attachment Two**

Additional Executor's Signature

By: [signature]
Rankin M. Smith, Jr.

Title: Co-Executor

Date: 1-23-02

# EXPLANATION OF CLAIM FOR REFUND OF FEDERAL ESTATE TAXES PAID BY AND/OR DUE AND OWING FROM THE ESTATE OF RANKIN M. SMITH, SR.

## TABLE OF CONTENTS


A. Overview: Grounds for Taxpayer's Claim for Refund and Supporting Facts ....1

1. Deductions Pursuant to Section 2053 of the Internal Revenue Code ....2

2. Corrected Valuation of the Common Stock of The Five Smiths, Inc. ....4

3. Law and Analysis ....4

   a. Deductions Allowed Pursuant to Section 2053 of the Internal Revenue Code .... 4
   b. Corrected Valuation of the Common Stock of The Five Smiths, Inc .... 8

4. Summary ....9

B. State Death Tax Credit ....10

C. Alternative Grounds ....10

D. Calculation of Federal Estate Tax To Be Refunded ....11

# EXPLANATION OF CLAIM FOR REFUND OF FEDERAL ESTATE TAXES PAID BY AND/OR DUE AND OWING FROM THE ESTATE OF RANKIN M. SMITH, SR.

## LISTING OF CHARTS


Chart One Funeral and Administration Expenses Claimed on Form 706 ........................3

Chart Two Administration Expenses Claimed in Addition to the Administration Expenses Claimed on Form 706 ........................................4

Chart Three Summary of Changes to the Taxable Estate ..................................................9

Chart Four State Death Tax Credit.....................................................................10

Chart Five Calculation of Federal Estate Tax To Be Refunded .....................................11


## LISTING OF EXHIBITS


Exhibit A Form 706, United States Estate (and Generation Skipping Transfer) Tax Return AS PREVIOUSLY FILED

Exhibit B Schedule R of Form 706, United States Estate (and Generation Skipping Transfer) Tax Return AS PREVIOUSLY AMENDED

Exhibit C Supplemental Report Prepared by Standard & Poor's

Exhibit D Supplemental Report Prepared by Standard & Poor's

Exhibit E Form 706, United States Estate (and Generation Skipping Transfer) Tax Return AS AMENDED (WITH SCHEDULES B AND J ONLY)

# EXPLANATION OF CLAIM FOR REFUND OF FEDERAL ESTATE TAXES PAID BY AND/OR DUE AND OWING FROM THE ESTATE OF RANKIN M. SMITH, SR. ATTACHED TO AND MADE A PART OF FORM 843[1]

## A. Overview: Grounds for Taxpayer's Claim for Refund and Supporting Facts

Rankin M. Smith, Sr. died on October 26, 1997. The Estate of Rankin M. Smith, Sr. (the "Estate") timely filed Form 706, United States Estate (and Generation Skipping Transfer) Tax Return, on January 26, 1999, pursuant to extension ("Form 706"). In addition, the Estate chose to defer the payment of its estate tax obligation, and accordingly elected to pay its estate tax obligation in ten (10) equal annual installments under Section 6166 of the Internal Revenue Code (the "Code"). A copy of Form 706 is attached as Exhibit A. Form 706 was subsequently amended to reflect a special allocation of a portion of Mr. Smith's unallocated generation-skipping tax exemption, which resulted in changes to Schedule R to Form 706 only. A copy of Schedule R as amended is attached as Exhibit B.

The Estate claims a reduction of estate taxes due and owing pursuant to Code Section 6166 in the amount of $5,478,849.74, or such greater amount as may be determined based upon the facts, circumstances and legal principles set forth herein, plus interest allowable by law and any other amount that can be legally reduced or refunded. This claim is attributable to (1) deductions pursuant to Code Section 2053 of estate administration expenses in addition to the estate administration expenses claimed on Form 706, as filed, and (2) the corrected valuation of the 12,424 shares of Class A common stock in The Five Smiths, Inc. (the "Company")[2] held by the

---

[1] Representatives of the Internal Revenue Service have informed us that we should expect to receive in the near future a notice of deficiency pertaining to the estate tax liability of the Estate of Rankin M. Smith, Sr. However, as of January 24, 2002, no notice of deficiency had been received.

[2] For purposes of Form 706, the Estate's Company stock was valued as Class A common stock. However, upon Mr. Smith's demise, all shares of Class A common stock converted into shares of Class B common stock, and for purposes

Estate. The claimed increase in estate administration expenses takes into account both (i) administration expenses paid or incurred through January 17, 2002; and (ii) administration expenses estimated to be incurred from January 18, 2002, until administration of the Estate is completed. The claimed reduction in estate taxes also takes into account the impact that these changes to the Form 706 have on the amount of the state death tax credit and on the amount of the interest deduction permitted for interest payments made on estate taxes deferred under Code Section 6166.

The Estate also protectively claims a reduction of estate taxes due and owing pursuant to Code Section 6166 (and/or such other Code Section or sections which may be applicable), plus interest allowable by law and any other amounts that can be legally reduced or refunded, due to administration expenses paid or incurred or estimated at the time of resolution of this claim for refund that are in addition to the amounts stated herein, and for administration expenses that are deductible only when paid.

The facts and legal authorities in support of the reduction of estate taxes due and owing pursuant to Code Section 6166 are set forth below.

1. **Deductions Pursuant to Section 2053 of the Internal Revenue Code**

On Form 706, the Estate claimed a deduction for funeral expenses and administration expenses totaling $2,976,820.89. These expenses included administration expenses paid or incurred at the time Form 706 was filed and estimates of additional administration expenses to be paid or incurred in the future. The amounts deducted on Form 706 are set forth on Schedule J and summarized on the following Chart One:

of this refund claim the Estate's Company stock is properly valued as Class B common stock; Code Sections 2703 and 2704 do not change this result.

| Chart One – Funeral and Administration Expenses Claimed on Form 706 | | |
|---|---|---|
| **Description** | **Amount Paid or Incurred** | **Amount Estimated Through Completion of Administration** |
| Funeral Expenses | $ 25,063.82 | $ 0 |
| Executors' Commissions | 0 | 233,000.00 |
| Attorneys' Fees | 1,110,916.29 | 600,000.00 |
| Accountants' Fees | 0 | 0 |
| Appraisal Fees | 97,071.74 | 0 |
| Interest Expense | 714,545.85 | 0 |
| Other Miscellaneous Expenses | 196,223.19 | 0 |
| **Totals** | **$2,143,820.89** | **$833,000.00** |

**Grand Total of Funeral and Administration Expenses Claimed on Form 706: $2,976,820.89**

Through January 17, 2002, the Estate has paid or incurred administration expenses that in some cases are already in excess of the estimates of certain categories of expenses listed on Form 706. In addition to the amounts paid or incurred through January 17, 2002, the Estate will necessarily pay or incur additional administration expenses during the period starting on January 18, 2002, and ending at the time the Estate completes its administration and distributes all remaining assets to the Estate's beneficiaries. These administration expenses include additional attorneys' fees (including those related to a will contest), additional appraisal fees, additional accounting fees, additional interest expense (including interest on estate tax deferred under Code Section 6166) and other expenses related to the administration of the estate and the preservation of its property.

The amounts paid or incurred through January 17, 2002, and the amounts the Estate estimates will be paid or incurred in the future exceed the amounts claimed on Form 706 (paid and estimated) by a total amount of $7,360,733.28. The difference between the amounts paid or incurred and the amounts estimated to be paid or incurred in the future in each category versus the amounts claimed on Form 706 are set forth on the following Chart Two:

| **Chart Two – Administration Expenses Claimed in Addition to the Administration Expenses Claimed on Form 706** | | |
|---|---|---|
| **Description** | **Additional Amount Paid or Incurred Through January 17, 2002** | **Additional Amount Estimated Through Completion of Administration** |
| Executors' Commissions | $ 0 | $ 738,280.88 |
| Attorneys' Fees | 3,115,531.39 | 150,000.00[3] |
| Accountants' Fees | 0 | 50,000.00 |
| Appraisal Fees | 0 | 50,000.00 |
| Other Expenses | 0 | 25,000.00 |
| Interest Expenses | 3,231,921.01[4] | *undetermined*[5] |
| **Totals** | **$6,347,452.40** | **$1,013,280.88** |

**Grand Total of Administration Expenses Claimed in Addition to the Administration Expenses Claimed on Form 706: $7,360,733.28**

These additional estate administration expenses in Chart Two have not previously been claimed as deductions under Code Section 2053, and they have not been allowed as deductions by the Internal Revenue Service. This refund claim seeks the allowance of deductions for expenses paid or incurred as of January 17, 2002, as well as those expenses reasonably estimated to paid or incurred upon or before the termination of the Estate's administration.

2. <u>Corrected Valuation of the Common Stock of The Five Smiths, Inc</u>.

On Form 706, the Estate valued the 12,424 shares of Class A common stock in the Company included in the Estate (hereinafter the "Stock"), as of October 26, 1997, at $25,369,999.95. However, based on supplemental reports, which are incorporated herein by

[3] This amount is in addition to the $600,000 of estimated attorneys' fees listed on Form 706. Thus, the total amount of estimated post-January 17, 2002 attorneys' fees is $750,000. Similarly, the total amount of estimated post-January 17, 2002 executors' commissions is $971,280.88 (= $233,000 + $738,280.88).

[4] This amount reflects an increase in interest paid or incurred on a SunTrust Bank line of credit and interest paid or incurred on estate taxes deferred under Code Section 6166. For ease of computation, the interest on the line of credit has been computed through February 1, 2002, and the interest on the deferred estate taxes has been computed through February 28, 2002. We note that the amount of the interest on the deferred estate tax has been calculated based on the estate tax asserted to be due under this claim for refund. The Estate protectively claims a deduction for the full amount of the interest on the amount of the deferred estate tax that is ultimately determined to be appropriate based on a final determination of the amount of the estate taxes deferred by the Estate.

reference, prepared by Standard & Poor's, and attached hereto as Exhibit C (which addresses the value of the Stock) and Exhibit D (which addresses the application of a key man discount in valuing the Company), the Estate now files this claim for refund to reflect the value of the Stock as of October 26, 1997 (valued as 12,424 shares of Class B common stock, since all shares of Class A common stock owned by Mr. Smith were converted into shares of Class B common stock on a one for one basis upon Mr. Smith's demise), at $20,000,000.00. This $5,369,999.95 reduction in the value of the Stock included in the Estate reduces the value of Mr. Smith's gross estate and taxable estate by the same amount, and this refund claim seeks a reduction in the amount of taxes and interest due and owing as a result of this reduction in value.

3. **Law and Analysis**

a. **Deductions Allowed Pursuant to Section 2053 of the Internal Revenue Code**

The Estate claims a reduction of estate taxes attributable to the deduction of administration expenses paid or incurred and estimated as set forth in Chart Two above. The estate tax is based upon the amount of the "taxable estate." Code §2001(a). In computing the taxable estate, the Code permits an estate to deduct administration expenses. Code §2053.

Section 2053 of the Code provides as follows:

> *(a) GENERAL RULE. – For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts –*
>
> *(1) for funeral expenses;*
>
> *(2) for administration expenses;*
>
> *(3) for claims against the estate, and*

[5] The amount of any additional interest expenses deductible as administration expenses shall be determined as such amounts are incurred or paid, and are intended to be covered by the protective refund claim contained herein.

*(4) for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate,*

*as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.*

The relevant portions of the Treasury Regulations provide as follows:

Section 20.2053-1. *Deductions for expenses, indebtedness, and taxes; in general*

*(a) General Rule. In determining the taxable estate of a decedent who was a citizen or resident of the United States at the time of his death, there are allowed as deductions under section 2053(a) and (b) amounts falling within the following two categories (subject to the limitations contained in this section...):*

*(1) First category. Amounts which are payable out of property subject to claims and which are allowable by the law of the jurisdiction, whether within or without the United States, under which the estate is being administered for--*

*(i) Funeral expenses;*

*(ii) Administration expenses;...*

*As used in this subparagraph, the phrase "allowable by the law of the jurisdiction" means allowable by the law governing the administration of decedents' estates...*

Section 20.2053-3. *Deduction for expenses of administering estate*

*(a) In general. The amounts deductible from a decedent's gross estate as "administration expenses" of the first category... are limited to such expenses as are actually and necessarily incurred in the administration of the decedent's estate; that is, in the collection of assets, payment of debts, and distribution of property to the persons entitled to it. ...Expenditures not essential to the proper settlement of the estate, but incurred for the individual benefit of the heirs, legatees, or devisees, may not be taken as deductions. Administration expenses include:*

*(1) Executor's commission;*

*(2) Attorney's fee; and*

*(3) Miscellaneous expenses.*

*(d) Miscellaneous administration expenses. (1) Miscellaneous administration expenses include such expenses as court costs, surrogates' fees, accountants' fees, appraisers' fees, clerk hire, etc. Expenses necessarily incurred in preserving and distributing the estate are deductible, including the cost of storing or maintaining property of the estate, if it is impossible to effect immediate distribution to the beneficiaries. Expenses for preserving and caring for the property may not include outlays for additions or*

*improvements; nor will such expenses be allowed for a longer period than the executor is reasonably required to retain the property.*

Where the final amount of estate administration expenses is not known, and not ascertainable prior to the expiration of the statute of limitations provided by Code Section 6511, Section 2053 of the Code permits an estate to deduct an estimate of the amount of such administration expenses that it expects to incur prior to the final distribution and winding up of the estate. The Treasury Regulations under Code Section 2053 specifically recognize the allowance of a deduction for estimated administration expenses. *See,* Treas. Reg. §§20.2053-1(b)(3); -3(c)(1).

The Estate has reasonably estimated the administration expenses set forth in this claim, and such administration expenses will likely be incurred and paid. The Estate's estimates are based upon the best information and estimates available, but the amounts could be subject to increase depending upon circumstances not currently foreseen. The actual administration expenses paid or incurred up to the date of final distribution of the Estate's assets, even if they exceed the reasonably estimated amount of such expenses, are allowed as a deduction under Code Section 2053. The Estate hereby specifically requests that the amount of its estate tax obligation due and owing pursuant to Code Section 6166 or any other Code section be computed by allowing as a deduction all administration expenses actually paid or incurred prior to the final winding up of the Estate. *See,* Treas. Reg. §20.2053-1(b)(3) (refund allowed where the amount finally determined exceeds the estimated amount of administration expenses).

The administration expenses claimed herein are (i) allowable under the laws of the State of Georgia, (ii) have been or will be actually and necessarily incurred in the administration of the Estate within the meaning of Treasury Regulation section 20.2053-3(a),[6] (iii) have been paid or

[6] The Estate reserves the right to assert that the requirements set forth in Treasury Regulation section 20.2053-3 or any other Treasury Regulation or authority for determining whether administration expenses are allowable as a deduction in

incurred or properly estimated, and (iv) have been timely claimed as a deduction by the Estate. Such administration expenses are allowable as a deduction in determining the taxable estate. Accordingly, the administration expenses are allowable as a deduction pursuant to Code Section 2053 in computing the Estate's final estate tax liability under Code Section 2001.

**b. Corrected Valuation of the Common Stock of The Five Smiths, Inc.**

Code Section 2001(a) provides for a tax on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States. For Federal estate tax purposes, property includable in a decedent's gross estate is generally included at its fair market value on the date of the decedent's death. Code §2031(a); Treas. Regs. §20.2031-1(b). Fair market value is defined as the price that a willing buyer would pay a willing seller, both persons having reasonable knowledge of all relevant facts and neither person being under a compulsion to buy or to sell. Treas. Regs. §20.2031-1(b). The willing buyer and the willing seller are hypothetical persons, instead of specific individuals and entities, and the characteristics of these imaginary persons are not necessarily the same as the personal characteristics of the actual seller or a particular buyer. *Estate of Bright v. United States,* 658 F.2d 999, 1005-1006 (5th Cir. 1981).

Section 2031 of the Code provides as follows:

> *(a) GENERAL RULE--The value of the gross estate of the decedent shall be determined by including to the extent provided for in this part, the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated.*

The relevant portions of the Treasury Regulations provide as follows:

Section 20.2031-1. *...valuation of property*

> *(b) Valuation of property in general. The value of every item of property includible in a decedent's gross estate...is its fair market value at the time of the decedent's death... The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts... The value is generally to be*

---

determining the Estate's taxable estate are invalid if, and to the extent that, they are interpreted as imposing a requirement for deductibility in addition to the requirements enumerated as (i), (iii), and (iv) in the text.

> *determined by ascertaining as a basis the fair market value as of the applicable valuation date of each unit of property. For example, in the case of shares of stock or bonds, such unit of property is generally a share of stock or a bond...All relevant facts and elements of value as of the applicable valuation date shall be considered in every case.*

The Estate asserts that the "Indicated Value of Class B Shares" as calculated on page 35 of the supplemental report attached hereto as Exhibit C reflects the correct fair market value of the Stock as of October 26, 1997, namely, $20,000,000.00. For purposes of the report, fair market value was properly defined as the price at which such stock would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell, and both having reasonable knowledge of relevant facts.

Moreover, the report was prepared by qualified and recognized valuation experts and gave due consideration to all of the elements required to be considered in stock valuations for federal tax purposes. This refund claim to reduce the amount of taxes and interest due as a result of the reduction in the previously reported value of the Stock should be granted in order to correctly reflect the fair market value of the Stock.

**4. Summary**

The Estate claims a reduced Taxable Estate of $12,730,733.23 based upon (i) the decrease in value of the 12,424 shares of common stock of the Company from $25,369,999.95 to $20,000,000.00, as set forth in Chart Three below, and (ii) the increased deductions in administration expenses in the amounts set forth in Chart Three below (or such other amounts as paid by the Estate in excess of these amounts).

| **Chart Three – Summary of Changes to the Taxable Estate** | |
|---|---|
| **Description** | **Change in Amount Claimed** |
| Difference between Corrected Stock Value and Value Reported on Form 706 | $5,369,999.95 |
| Executors' Commissions | 738,280.88 |
| Attorneys' Fees | 3,265,531.39 |

| | |
|---|---|
| Accountants' Fees | 50,000.00 |
| Appraisal Fees | 50,000.00 |
| Other Expenses | 25,000.00 |
| Interest Expenses | 3,231,921.01[7] |
| **Total Reduction in Taxable Estate** | **$12,730,733.23** |

## B. State Death Tax Credit

On Form 706, the Estate claimed a state death tax credit of $3,096,940.16. The reduced taxable estate, in accordance with Chart Three above, reduces the amount of the estate taxes payable to the States of Georgia and Florida and reduces the amount of the Estate's state death tax credit. The Estate protectively claims the full amount of the state death tax credit that is ultimately determined to be appropriate based on a final determination of the amount of the Estate's taxable estate.

| **Chart Four – State Death Tax Credit** | |
|---|---|
| **Description** | **Amount Of Credit** |
| State Death Taxes Payable as a Result of Positions | $1,061,161.71 |
| **Total Additional (Lesser) State Death Tax Credit Claimed** | **($2,035,778.45)** |

## C. Alternative Grounds

The estate administration expenses paid or incurred by the Estate, including those that are reasonably estimated, are allowed as a deduction under Section 2053 of the Code. The estate administration expenses claimed herein, including estimated expenses, have been necessarily incurred in the process of administering the Estate, and the administration of the Estate has not been unduly prolonged. Accordingly, the claimed deductible expenses meet all of the requirements of the Code, the Treasury Regulations and the relevant case law and Internal Revenue Service

[7] See also footnote 5, *supra*.

rulings in this area. Accordingly, the value of the decedent's estate need be reduced to reflect these expenses.

In the alternative, to the extent that any of the claimed administration expenses are not allowed as deductible estate administration expenses, such amounts are properly treated as either liabilities of the Estate or claims against the Estate that are deductible under Code Section 2053 or other applicable provisions of law.

## D. Calculation of Federal Estate Tax To Be Refunded

Chart Five below shows the calculation of the Federal estate tax decrease claimed on Form 843. As corrected per Form 843, the "Total Gross Estate" on Chart Five includes (i) the Stock at a value of $20,000,000.00 instead of the value shown of Form 706 as filed, and (ii) "Funeral and Administration Expenses" of $2,976,820.89 reflected on Form 706 as filed, plus $7,360,733.28 of additional administration expenses as set forth in Chart Two.

**Chart Five – Calculation of Federal Estate Tax To Be Refunded**

| Description | Shown on Form 706 | As Corrected Per Form 843 |
|---|---|---|
| Total Gross Estate | $ 36,151,175.12 | $ 30,781,175.17 |
| Funeral and Administration Expenses | 2,976,820.89 | 10,337,554.17 |
| Other Allowable Deductions | 10,485,978.20 | 10,485,978.20 |
| Taxable Estate | 22,688,376.03 | 9,957,642.80 |
| Post-1976 Adjusted Taxable Gifts | 827,859.00 | 827,859.00 |
| Subtotal (Taxable Estate + Post-1976 Gifts) | 23,516,235.03 | 10,785,501.80 |
| Total Tentative Tax | 13,126,729.27 | 5,612,101.08 |
| Aggregate Post-1976 Gift Taxes Payable | 86,223.69 | 86,223.69 |
| Gross Estate Tax | 13,040,505.58 | 5,525,877.39 |
| Unified Credit Against Estate Tax | 192,800.00 | 192,800.00 |
| Subtotal | 12,847,705.58 | 5,333,077.39 |
| Credit For State Death Taxes | 3,096,940.16 | 1,061,161.71 |
| Net Estate Tax Payable | 9,750,765.42 | 4,271,915.68 |
| **Form 843 Claim for Refund Requested** | N/A | **$ 5,478,849.74** |

For additional detail regarding the computation of the refund amount, see attached Exhibit E showing the recalculated gross estate, taxable estate, and estate tax.

**[EXPLANATION OF CLAIM FOR REFUND OF FEDERAL ESTATE TAXES PAID BY AND/OR DUE AND OWING FROM THE ESTATE OF RANKIN M. SMITH, SR.]**

**[EXHIBITS NOT INCLUDED]**